**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PRUDENCE WHITE, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 10-506 (FLW) |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | **OPINION** |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| | : | |
| Defendant. | : | |

**WOLFSON, United States District Judge**:

      Prudence White ("Plaintiff") appeals from the final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff disability benefits under the Social Security Act ("Act"). The Court has jurisdiction to hear this matter pursuant to 42 U.S.C. § 405(g). Plaintiff contends that the record, when considered in full, substantiates her claims and requires a conclusion that she is entitled to disability insurance benefits under sections 216(I) and 223 of the Act. Specifically, Plaintiff maintains that the Administrative Law Judge (the "ALJ") erred in determining that Plaintiff was not disabled between her alleged onset date of April 1, 2001 and August 30, 2005. After reviewing the administrative record, this Court finds that the ALJ's decision is based on the substantial evidentiary support required by 42 U.S.C. § 405(g). Therefore, the ALJ's decision is affirmed and Plaintiff's Complaint is dismissed in its entirety.

**I. OVERVIEW**

A. <u>Procedural History</u>

Plaintiff first filed an application for Disability Insurance Benefits and Supplemental Security Income Benefits on July 14, 2002, alleging a disability onset date of April 1, 2001.  Both the initial application and request for reconsideration were denied.  A timely request for a hearing was filed on February 19, 2003, and a hearing was held before ALJ Daniel N. Shellhamer on July 14, 2004.  On October 27, 2004, the ALJ issued an unfavorable decision denying Plaintiff benefits.  Plaintiff subsequently petitioned the Social Security Appeals Council (the "Appeals Council") for review of the ALJ's decision.   However, on May 20, 2005,  the Appeals Council denied Plaintiff's petition.  Plaintiff subsequently filed for review in the United States District Court for the District of New Jersey and, on July 6, 2006, a Consent Order was entered by the Honorable Mary Cooper, United States District Judge,  remanding the case to the Commissioner of Social Security.  A hearing subsequently took place on June 5, 2007 before ALJ Shellhamer. On September 29, 2008, ALJ Shellhamer issued a partially favorable decision, finding that Plaintiff was not disabled prior to September 1, 2005, but that she became disabled beginning on that date and was, therefore, entitled to benefits under the Act beginning on September 1, 2005. Plaintiff again petitioned the Social Security Appeals Council for review of the ALJ's decision. However, on January 7, 2010, the Appeals Council denied Plaintiff's petition, making the ALJ's September 29, 2008 decision the final decision of the Commissioner.

B. <u>Background</u>

Plaintiff was born on August 21, 1954.  Administrative Record ("AR") 21, 367.   Before

her disability, Plaintiff held numerous jobs for short periods of time including working as a court

clerk, file clerk, bar maid, receptionist, telemarketer, home health aid and nurse's aid.  AR 101,

270-271.  Plaintiff claims she stopped working in 2001 as a result of her mental illness. AR 84.

According to Plaintiff she has "changed jobs a number of times over the years due to [her]

condition" and that she's "also had periods of time [where she] couldn't work at all."  AR 84.

Specifically, Plaintiff claims that she has difficulty concentrating , AR 84, that she sometimes has

difficulty understanding advice or directions, AR 120, that she has a short attention span, cannot

follow written or spoken instructions and cannot get along with female superiors.  AR 121.

Plaintiff has been prescribed various medications over the years related to her mental illness

including Trazadone, Risperdal and Lexapro. AR 383.


C. Review of Medical Evidence prior to September 1, 2005

Because this Appeal solely concerns the ALJ's finding that Plaintiff was not disabled

from April 2001 through August 30, 2005, the Court will only consider the medical evidence

within that time frame.  Plaintiff asserts that she is disabled because of various conditions

relating to her mental illness including major depression, bipolar disorder and other psychiatric

disorders.  AR 367.  Based on the foregoing conditions, Plaintiff claims a disability onset date of

April 1, 2001.


Plaintiff saw Dr. Ustaires at the Greater Trenton CMHC System on April 25, 2001 and, at

that time, Dr. Ustaires noted that Plaintiff was alert, oriented times three and that her mood was

stable.  AR 168.  In addition, the progress notes provide that Plaintiff denied suicidal and

homicidal ideations and that Plaintiff showed no evidence of delusions.  AR 168.

Plaintiff again met with Dr. Ustaires at the Mercer Mental Health Network ("MMHN") on June 13, 2001.  At that time, Plaintiff reported that although she had suffered a mood swing in the previous week, with Serzone, her mood became "good and stable."  AR 167.   Moreover, Plaintiff again denied homicidal and suicidal ideations and Dr. Ustaires noted that there was no evidence of delusions.  Id.  Plaintiff next met with Dr. Ustaires on July 11, 2001.  At that time, Plaintiff denied that she was depressed and denied suicidal and homicidal ideations as well as hallucinations and delusions.  Moreover, Plaintiff reported that Respridal helped keep her stable and helped control her anger.   Dr. Ustaires also noted that Plaintiff's demeanor was pleasant.  AR 167.   Plaintiff saw Dr. Ustaires on July 18, 2001 at which time the doctor noted that he had "not seen patient depressed or anxious."  AR 166.  Moreover, Dr. Ustaires stated that Plaintiff "claims only vague symptoms of mood swings [and] denies depression."  In addition, Dr. Ustaires noted that because Plaintiff claimed that Serzone and Risperdal helped control her anger and calm her down, he was continuing these medications.  Notes from an August 29, 2001 meeting with Dr. Ustaires demonstrate that Plaintiff was "euthymic" and that her main issue was with "females in authority."  AR 165.  On January 2, 2002, Plaintiff was assessed as stable.  AR 163.  On January 23, 2002, Plaintiff reported a mood swing the day before and "report[ed] poor stress tolerance."  However, Dr. Ustaires also noted that Plaintiff was alert, oriented times three and that her mood was stable.  AR 162.

In September 2002, Sim Platek, MSW, LCSW, Plaintiff's social worker from Catholic

Charities reported that Plaintiff had "vague claims of mood swings," but that she had maintained stability" and that she was continuing with "welfare work related programs." AR 176-177. Moreover, Mr. Platek noted that at Plaintiff's last appointment in June 2002, Plaintiff was well-groomed, calm attentive and cooperative, that her thoughts were organized and that she denied hallucinations and delusions. Further, Mr. Platek described Plaintiff's mood as "euthymic." In addition, Mr. Platek noted that there were no limitations with regard to Plaintiff's understanding, memory, concentration and persistence. However, Dr. Platek did note that Plaintiff reported "poor work stress tolerance due to issues with females in authority." AR 180.

Perry Shaw, M.D., evaluated Plaintiff in November 2002 at the request of the Administration. Dr. Shaw stated that he had reviewed therapists' notes between October 2001 and February 2002, and, additionally, that he had seen Plaintiff in November 1998. Dr. Shaw noted that Plaintiff reported that she could not hold a job because of "my sickness" and that Plaintiff had been told that she had "bipolar manic depression [and] mood swings." AR 185. Dr. Shaw found that Plaintiff did not appear sad or morose and that she was neither elated nor depressed. Moreover, Dr. Shaw noted that Plaintiff had no difficulty maintaining eye contact, did not appear tense and was not guarded. Further, Dr. Shaw stated that Plaintiff's associations were rational and that her affect was appropriate. In addition, Dr. Shaw found that Plaintiff did not suffer from hallucinations or delusions. AR 187.

In December 2002, notes from Plaintiff's psychiatric visits with Catholic Charities reveal that Plaintiff was anxious about her children, but that she was alert, oriented times three and that

5

her affect was appropriate.  AR 220.  In January 2003, Plaintiff was again reported as alert, oriented times three and stable.  AR 219.  In June, 2003, Plaintiff offered "vague reports of symptoms" but additional notes from Catholic Charities state that Plaintiff was alert, oriented times three and that her mood was stable.  AR 218.   Moreover, the report states that Plaintiff denied delusions and hallucinations and that her affect was appropriate.

On January 8, 2003, a mental residual functional capacity assessment was performed by state agency physician Dr. Herman Berliss.  AR 193-194.   Dr. Berliss noted that according to her treating physicians, Plaintiff's current symptoms were "vague claims of mood swings" but that Plaintiff had no limitations with respect to understanding, memory, sustained concentration and persistence.  Similarly, Dr. Berliss found that Plaintiff was only mildly restricted in her daily living and in maintaining concentration, persistence or pace and moderately limited in maintaining social functioning.  Moreover, Dr. Berliss found that Plaintiff had presented no repeated episodes of deterioration. AR 207.

A psychiatric evaluation by Dr. S.C. Mundassery in March 2004 demonstrated that Plaintiff was neatly dressed and clean and that her affect was appropriate. In addition, Dr. Mundassery noted that Plaintiff's cognitive functions, adaptation and judgment were intact. However, Dr. Mundassery noted that Plaintiff's mood was dysphoric.  AR 213.

Finally, on August 1, 2005, Plaintiff saw Jorge Bascara, M.D., who noted that Plaintiff was alert and that she appeared eurythmic with "no overt thought or perceptual disorder."  AR 435.

D. <u>Testimonial Record</u>

Plaintiff appeared at a hearing before ALJ Shellhamer on July 14, 2004.  AR 244.

Plaintiff testified that she lived with her son and that she stopped driving in 2003 because her

reflexes were slow.  AR 250.  Plaintiff said that she typically walks or takes public transportation

to the store and that public transportation sometimes causes her problems because she has

difficulty following directions.  AR 250.  Plaintiff further testified that she participates in the

Work Fair program and that, as part of the program, she had been asked to perform some work,

but that she kept "getting sick on the job" and that her doctors submitted papers to the Work Fair

program so that she didn't have to do anything else.  AR 251-252.  In addition, Plaintiff testified

that during the past two decades she had not been able to hold a job for more than a few months

because of conflicts with her supervisors and coworkers.  AR 255-257.


Plaintiff further testified that she suffered from depression, bipolar disorder and stress.

AR 258.  Plaintiff stated that she is depressed every day, suffers from crying spells when she is

stressed out, has difficulty sleeping and has occasional thoughts of hurting herself.  AR 258.

Plaintiff testified that she has difficulty concentrating and that she has difficulty getting along

with women.  AR 260.  Plaintiff testified that she cooks "once in a while," that she goes food

shopping with her niece and that she has some difficulty completing household chores because

she has no energy.  AR 262.  In addition, Plaintiff testified that she takes four medications each

day: Risperdal, Trazodone, Serzone and Buspar.  AR 263.  Further, Plaintiff stated that if she

forgets to take her medications, she "might have a mood swing."  AR 264.

Plaintiff appeared at a second hearing before ALJ Shellhamer on June 5, 2007.  AR 465.

In addition to Plaintiff's testimony, Matthew Treihart, a vocational expert, testified at the June 5,

2007 hearing.  The ALJ posed the following hypothetical to Mr. Treihart: "[I]f you had an

individual of a similar age, education and past work experience as Ms. White and if I were to

restrict her to only performing jobs that were simple, one or two step instructions, not

complicated or multi-step and would be required to work within a well set defined routine, which

would . . . require only minimal occupational changes in job duties . . .[and] where there was only

minimal interaction with the public and . . . coworkers. Would there be examples of any jobs that

that individual might be able to do, recognizing again there's no exertional limitations?"  AR

496-497.  In response, Mr. Treihart testified that such an individual would be capable of

performing a sedentary unskilled job such as "assembly work or sub assemblies where you would

only be putting together parts."  AR 498-499.   In addition, Mr. Treihart testified that, according

to statistics from the Department of Commerce and the Department of Labor, approximately

700,000 of such jobs exist in the national economy and approximately 15,000 of such jobs exist

in the regional economy.  AR 499, 509, 510.  Mr. Treihart testified that Plaintiff could perform

the additional job of "packaging of similar type materials" and that these jobs existed in the

economy separate and apart from the assembly jobs.  AR 499-500.

The ALJ then imposed a further limitation that "the hypothetical individual would be

required to work without fast paced duties or timed production demands."  AR 500.   In response,

Mr. Treihart responded that although the assembly and packaging jobs would be ruled out, there

were other sedentary or light jobs that Plaintiff could perform that would meet all the limitations

including the job of a mail clerk. In addition, Mr. Triehart testified that there were approximately

170,000 mail clerk jobs nationwide and 6,500 in the State of New Jersey. AR 500.


E. The ALJ's Findings

  The ALJ began by finding that Plaintiff met the insured status requirements of the Social

Security Act on March 31, 2004. AR 283. Thus, Plaintiff was required to established disability

on or before that date to be eligible for benefits. The ALJ then applied the standard five-step

process in order to determine if Plaintiff has satisfied his burden of establishing disability. Id. At

Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April

1, 2001, the alleged onset date, and, at Step Two, that claimant had the following severe

impairments: mood disorder and personality disorder. AR 284. At Step Three, the ALJ

determined that since the onset date of disability, Plaintiff has not had an impairment or

combination of impairments that meets or medically equals one of the listed impairments under

SSA that would automatically find Plaintiff disabled. Id. At Step Four, the ALJ determined that

prior to September 1, 2005, Plaintiff had the residual functional capacity ("RFC") to perform a

full range of heavy work activity, however, Plaintiff's mental impairments limited her to

performing simple unskilled positions in a well-defined routine with only minimal changes in a

work setting and in a position with minimal interaction with the public and co-workers. AR 284.

The ALJ made his findings by stating that they were consistent with the objective medical

evidence and other evidence in the record, and that Plaintiff's statements concerning the

intensity, persistence and limiting effects of her symptoms were not credible prior to September

1, 2005 to the extent that they were inconsistent with the RFC assessment. AR 284-85.

Specifically, the ALJ noted that although the Plaintiff had a history of depression, there was insufficient medical evidence in the record regarding the claimant's conditions to find that she had functional limitations to such a disabling degree to preclude the performance of all work activity on a sustained basis for a period of 12 continuous months.  AR 286.

Indeed, the ALJ noted that in an evaluation of June 2002, Plaintiff was calm, cooperative and there was no evidence of hallucinations or delusions.  Moreover, Plaintiff's social worker indicated that Plaintiff's mood was euthymic and that she had no limitations with regard to understanding and memory, or sustaining concentration and persistence. AR 286.  Further, a mental status examination in November 2002 demonstrated that Plaintiff was not sad, morose, elated or depressed.  AR 286.  In June 2003, the ALJ noted that although the Plaintiff offered "vague reports of symptoms," her mental status revealed that she was alert, her mood euthymic and that she was stable. AR 286.  A psychiatric evaluation in March 2004 revealed that Plaintiff had an appropriate affect and that there was no evidence of hallucination.  AR 287.  Finally, the ALJ noted that as late as August 2005, plaintiff's treating physician noted that Plaintiff was "alert, sensorium clear.  At this time, she appeared euthymic and no over thought or perceptual disorder were noted."  Id.  For these reasons, the ALJ concluded that Plaintiff's subjective complaints were not credible "to the extent alleged when compared to the totality of the record," and that while the Plaintiff "may have had periods of diminished abilities, [her] conditions did not satisfy the requirements of 'disability', as required in the Social Security Act and Regulations."  AR 287.

Having determined Plaintiff's RFC, the ALJ went on to find that Plaintiff was unable to perform past relevant work.  AR 288.  Proceeding to Step Five, the ALJ determined that since Plaintiff was born on August 21, 1954, she was 47 years old on the alleged onset of her disability, which placed her in the "younger individual" category for DIB purposes.  AR 288. The ALJ further found that Plaintiff had at least a high school education and was able to communicate in English, and that transferability of job skills was not material because Plaintiff is found to be limited to unskilled labor.  Finally, the ALJ considered the Plaintiff's RFC, age, education and work experience as well as Plaintiff's non-exertional limitations.  Specifically, to determine the extent of erosion of the occupation base caused by Plaintiff's limitations, the ALJ asked Mr. Treihart, the vocational expert, whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience and RFC for the period prior to September 1, 2005.  Mr. Treihart testified that given these factors, an individual would be able to perform the requirements of a job such as an assembler and that approximately 15,000 of such jobs exist in the regional economy.  For these reasons, the ALJ found that a significant number of jobs existed in that national economy prior to September 1, 2005 that Plaintiff could perform, and, as a result, that Plaintiff was not disabled as defined by the SSA at any time through September 1, 2005.

II. Discussion

A. Standard of Review

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of

the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of

Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); see

Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir.2001).  The Commissioner's decisions regarding

questions of fact are deemed conclusive on a reviewing court if supported by "substantial

evidence in the record." 42 U.S.C. § 405(g); see Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir.2000).

While the court must examine the record in its entirety for purposes of determining whether the

Commissioner's findings are supported by substantial evidence, Gober v. Matthews, 574 F.2d

772, 776 (3d Cir.1978), the standard is highly deferential.  Jones v. Barnhart, 364 F.3d 501, 503

(3d Cir.2004).  Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less

than a preponderance.  McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir.2004).  "It

means such relevant evidence as a reasonable mind might accept as adequate."  Plummer v.

Apfel, 186 F.3d 422, 427 (3d Cir.1999).  A reviewing court is not "empowered to weigh the

evidence or substitute its conclusions for those of the fact-finder."  Williams v. Sullivan, 970

F.2d 1178, 1182 (3d Cir.1992).  Accordingly, even if there is contrary evidence in the record that

would justify the opposite conclusion, the Commissioner's decision will be upheld if it is

supported by the evidence.  See Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir.1986).


B.  Standard for Entitlement of Benefits

        Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the

statutory insured status requirements.  See 42 U.S.C. § 423(c).  Plaintiff must also demonstrate

the "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. § 423(d)(1)(A); see Plummer, 186 F.3d at 427.  An individual is not disabled unless "his

physical or mental impairment or impairments are of such severity that he is not only unable to

do his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §

423(d)(2)(A).  Eligibility for supplemental security income requires the same showing of

disability.  42 U.S.C. § 1382c(a)(3)(A); 42 U.S.C. § 1382c(a)(3)(B).


The Act establishes a five-step sequential process for evaluation by the ALJ to determine

whether an individual is disabled.  See 20 C.F.R. § 404.1520.  First, the ALJ determines whether

the claimant has shown that he is not currently engaged in "substantial gainful activity." 20

C.F.R. § 404.1520(a); see Bowen v. Yuckert, 482 U.S. 137, 146-47 n. 5, 107 S.Ct. 2287, 96

L.Ed.2d 119 (1987). If a claimant is presently engaged in any form of substantial gainful activity,

he/she is automatically denied disability benefits.  See 20 C.F.R. § 404.1520(b); see also Bowen,

482 U.S. at 140.  Second, the ALJ determines whether the claimant has demonstrated a "severe

impairment" or "combination of impairments" that significantly limits his physical or mental

ability to do basic work activities.  20 C.F.R. § 404.1520(c); see Bowen, 482 U.S. at 146-7 n. 5.

Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20

C.F.R. § 404.1521(b).  These activities include physical functions such as "walking, standing,

sitting, lifting, pushing, pulling, reaching, carrying or handling."  Id.  A claimant who does not

have a severe impairment is not considered disabled. 20 C.F.R. § 404.1520(c); see Plummer, 186

F.3d at 428.  Third, if the impairment is found to be severe, the ALJ then determines whether the

impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P ., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4) (iii).  If the claimant demonstrates that his/her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his/her burden of proof and is automatically entitled to benefits.  See 20 C.F.R. § 404.1520(d); see also Bowen, 482 U.S. at 146-47 n. 5. If the specific impairment is not listed, the ALJ will consider in his/her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent.  See 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment.  Id. An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar.  Williams, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he/she retains the residual functional capacity to perform his/her past relevant work.  20 C.F.R. § 404.1520(e); Bowen, 482 U.S. at 141.  If the claimant is able to perform his previous work, the claimant is determined to not be disabled. 20 C.F.R. § § 404.1520(e), 416.920(e); Bowen, 482 U.S. at 141-42.  The claimant bears the burden of demonstrating an inability to return to the past relevant work.  Plummer, 186 F.3d at 428.  Finally, if it is determined that the claimant is no longer able to perform his/her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." Bowen, 482 U.S. at 146-47 n. 5; Plummer, 186 F.3d at 428.  This step requires the ALJ to

14

consider the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(f).  The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled. Id.

C. Plaintiff's Claims on Appeal

   In the instant matter, Plaintiff claims that the ALJ made three separate errors that require this Court to reverse the decision of the Commissioner or, in the alternative to remand to the Commissioner for reconsideration.  First, Plaintiff claims that the ALJ erred at Step Three because he did not properly consider the combined effect of all of Plaintiff's impairments.  Next, Plaintiff claims that the ALJ erred by failing to properly explain his RFC determination.  Finally, Plaintiff claims that the ALJ erred by failing to obtain the testimony of a psychiatric expert.

1. Plaintiff's Combined Impairments

   Plaintiff contends that the ALJ erred in his Step Three determination because he did not properly consider the combined effect of Plaintiff's mood disorder and personality disorder when he determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled a Listed Impairment.  Specifically, Plaintiff argues that the ALJ failed to evaluate Plaintiff's Mood Disorder under paragraph 12.04 of the Listing of Impairments and failed to evaluate her Personality Disorder under paragraph 12.08 of the Listing of Impairments.  In addition, Plaintiff contends that the ALJ failed to combine both of these psychiatric impairments for the evaluation of medical equivalence.  The Court does not agree.

At Step Three, an ALJ must consider each of the claimant's individual conditions and determine whether they meet or equal any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1 that give rise to a presumption of disability.  Additionally, the regulations state that if the claimant has "a combination of impairments, no one of which meets a listing ... [the ALJ] will compare [the claimant's] findings with those for closely analogous listed impairments." 20 C.F.R. § 404.1526(b)(3).  In order to find that a combination of impairments is medically equivalent to one in the listing, it must be "at least of equal medical significance."  Id. The ALJ will thus review the record and determine whether the ailments in combination were equal to any of the enumerated impairments. 20 C.F.R. §§ 404.1520(d), 416.920(d).

It is well-established that an ALJ's conclusion that a claimant's impairments do not meet or equal any Listed Impairment without "identifying the relevant listed impairments, discussing the evidence, or explaining [the] reasoning" constitutes error requiring remand.  See Burnett v. Comm'r of Social Security, 220 F.3d 112, 119 (3d Cir.2000).   Thus, in Burnett, the Third Circuit found an ALJ's conclusory statement that the claimant failed to meet any listing "hopelessly inadequate" and remanded the case for a full discussion of the evidence and explanation of the ALJ's reasoning.  220 F.3d at 119-120.  However, in Jones v. Barnhart, 364 F.3d 501 (3d Cir. 2004), the Third Circuit explained that the purpose of Burnett was to guarantee "sufficient development of the record and explanations of findings to permit meaningful review of step-three determinations.  Jones, 364 F.3d at 505.  Moreover, in Jones, the Third Circuit noted that an ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis," but that the decision "read as a whole" must be capable of providing meaningful

16

judicial review.  Id.  Moreover, multiple courts have upheld a Step Three determination that a claimant is not presumptively disabled based upon a less than detailed analysis of the combined impairments, as long as the rest of the Step Three analysis, including that of the individual impairments, was detailed, there was some consideration of the combined impairments, and the determination was based upon substantial evidence, or there was no harm to the claimant. See Branco v. Comm'r, 2009 WL 2058866 (D.N.J.) (stating that the Court was unaware of any precedential authority requiring an ALJ to combine and compare the claimant's impairments); Mirabal v. Comm'r, No. 2:08-cv-01079 (D.N.J.2009) (finding that an ALJ's failure to "explicitly state that he considered Plaintiff's impairments both individually and in combination ... does not suggest that he failed to consider the combined effect," and that an AL''s detailed analysis of the individual impairments and conclusion that the claimant did not have "an impairment or combination of impairments" that met or equaled a listing was sufficient such that remand was not warranted); see also Rivera v. Comm'r, 164 Fed. Appx. 260, 263 (3d Cir.2006) (affirming an ALJ's conclusory Step Three analysis because the error was "harmless").

Here, the ALJ's analysis and findings at Step Three comport with both the C.F.R. regulations and the standard established in Burnett.   Indeed, sections 12.04 and 12.08 of the Listing of Impairments require that a claimant meet certain criteria to warrant a finding of disability.  Contrary to Plaintiff's assertions, the ALJ specifically referenced the relevant requirements of section 12.00 of the Listing of Impairments in his Opinion and expressly stated that the claimant did not have "an impairment or a combination of impairments" that equaled one of the Listings.  AR 284.  Indeed, the ALJ stated that Plaintiff was required , but failed, to meet

the "B" and "C" criteria set forth in sections 12.04 & 12.08.  For example, the ALJ explained that

Plaintiff's mental impairments did not reflect marked limitations on her daily living activities,

social functioning or the ability to maintain attention and concentration, as required under section

12.04 and 12.08.   As a result, the ALJ held that claimant's impairments were not "sufficient to

meet any listed mental impairment."  AR 284.  Thus, on review, the Court finds that based on the

record and the language used, the ALJ properly considered Plaintiff's impairments in

combination.[1]

In addition, the Court notes that the evidentiary burden is on Plaintiff at the third step.

See Poulos v. Comm'r, 474 F.3d 88, 92 (3d Cir.2007).  However, Plaintiff has failed to identify

which, if any, C.F.R. listing would be met or equaled by her combined impairments. Therefore,

remand is not warranted at this stage.

2. RFC Determination

At Step Four, the ALJ found that prior to September 1, 2005, Plaintiff had the RFC to

perform a full range of heavy work activity but that her mental impairments limited her to

performing simple unskilled positions in a well-defined routine with only minimal changes in a

work setting and having minimal interaction with the public and co-workers.  Plaintiff's counsel

contends that the ALJ's RFC assessment was not explained; specifically, Plaintiff's counsel

---

[1]However, even if the Court were to find that the ALJ's discussion at step three was
conclusory, the Court notes that abundant evidence supporting the position taken by the
ALJ exists in the record, with comparatively little contradictory evidence.  Thus, even if
the ALJ's statement could be considered conclusory, such a statement would be harmless
in light of the record.  See Rivera v. Comm'r, 164 Fed. Appx. at 263.

suggests that the ALJ's decision entirely failed to explain how the evidence led to his conclusion regarding Plaintiff's RFC.  The Court does not agree.

Initially, the Court notes that the ALJ supported the RFC determination with a thorough analysis of Plaintiff's medical records, which provide substantial evidence for his findings.  The ALJ spent several pages of a ten page opinion analyzing and reviewing Plaintiff's entire medical history including the reports of  Plaintiff's treating and examining physicians.  For example, the ALJ noted that between November 2001 and June 2003, Plaintiff's GAF ranged from 65 to 70.  AR 285-286.  At its lowest, Plaintiff's GAF was assessed in 2004 at 55, which, the ALJ noted was only  "indicative of moderate limitations" in social or occupational functioning.  AR 286.

Moreover, the ALJ considered the opinion of Sim Platek, Plaintiff's social worker, who noted that Plaintiff was "able to do activities of daily living" and that "Plaintiff was attending a work program with welfare and she was doing well."  AR 285.   In addition, the ALJ considered the assessment of Dr. Berliss, a non-examining State Agency review physician who found that Plaintiff was "not disabled" under SSR 96-6p.  Indeed, the ALJ noted that while Dr. Berliss did not have access to the entire record, the "preponderance of the reports" from Plaintiff's treating and examining physicians comprised persuasive evidence that Plaintiff's impairments did not impose severe limitations on her functional capacity to preclude the performance of all work activity.  AR 287.  Specifically, Dr. Berliss found that Plaintiff was not significantly limited in fifteen of twenty areas including the ability to understand and carry out and make simple work-related decisions.  AR 193-194.   Dr. Berliss additionally found that Plaintiff was only

moderately limited in her ability to interact with the public, get along with coworkers, accept instructions and respond to changes in the work setting.  AR 193-194.  Thus, taken together, the medical evidence provides substantial support for the ALJ's determination that Plaintiff retained the capacity to perform unskilled work in a well-defined routine with minimal interaction with the public and co-workers.

Moreover, to the extent that Plaintiff argues that because Dr. Shaw's 2008 assessment was unchanged from his 2002 assessment of Plaintiff the ALJ erred by failing to conclude that Plaintiff was disabled as early as 2002, the Court does not agree.  Indeed, the Court notes that Dr. Shaw's 2008 assessment of Plaintiff included several significant findings that were not present in his 2002 assessment of Plaintiff including, for example, that in 2008 Plaintiff reported hearing voices, having racing thoughts and that, at times, she felt as though  her thoughts are perceived from others.  AR 460.  None of these findings were present in Dr. Shaw's 2002 evaluation of Plaintiff; thus, the Court finds substantial evidence in the record supports the ALJ's determination that Plaintiff was not disabled prior to September 1, 2005.

Plaintiff additionally appears to argue that the ALJ erred in relying on the vocational expert's testimony since the ALJ's hypothetical did not include all of Plaintiff's mental limitations.  The Court does not agree.  Contrary to Plaintiff's assertion, the ALJ's hypothetical did not merely limit Plaintiff to "simple routine or one-two step tasks or low contact work."  Pl's Br. at 25.  Instead, as discussed above, the ALJ asked  Mr. Treihart whether there were jobs that could be performed by an individual with Plaintiff's characteristics who was also restricted to

"only performing jobs that were simple, one or two step instructions, not complicated or multi-step and would be required to work within a well set defined routine which would . . . require only minimal occupational changes in job duties" and "where there was only minimal interaction with the public and . . . with coworkers."  AR 496-498.   Thus, the ALJ's hypothetical corresponded with Dr. Berliss's opinion that Plaintiff could concentrate and carry out simple instructions but had difficulty interacting with the public and coworkers and responding to changes in job duties.  AR 496-498.  As such, the hypothetical sufficiently captured Plaintiff's mental limitations and the ALJ was entitled to rely on the vocational expert's answer in forming his conclusions.

Finally, Plaintiff argues that the ALJ improperly failed to rely on the Vocational Expert's testimony in response to hypothetical limitations posed by Plaintiff's counsel.  Specifically, Plaintiff argues that the ALJ failed to consider the Vocational Expert's testimony that an individual with Plaintiff's limitations would be unable to perform the jobs if the individual could not "handle usual work stress" such as dealing "effectively with a change in routine" or if their ability to make simple work related decision were interfered with 10 minutes in an hour.  AR 528.   The Court does not agree.

It is well -established that an ALJ is not required to "submit to the vocational expert every impairment alleged by a claimant.  Instead . . .the hypotheticals posed must 'accurately portray' the claimant's impairments and that the expert must be given an opportunity to evaluate those impairments 'as contained in the record.' . . . Fairly understood, such references to all

21

impairments encompass only those that are medically established." Rutherford v. Barnhart, 399

F.3d 546, 554 (3d Cir. 2005).  In the instant matter, the Court finds that the record does not

indicate that Plaintiff actually suffered from all the hypothetical limitations posed by Plaintiff's

counsel.  Thus, it was not error for the ALJ to not cite to this portion of the Vocational Expert's

testimony.


3. Psychiatric Expert

Finally, Plaintiff claims that the ALJ erred by failing to obtain the testimony of a

psychiatric expert.  Pl's Br. At 30-33.  Specifically, Plaintiff argues that because Plaintiff has

suffered from mental impairments since April 1, 2001, she necessarily suffers from mental

impairments which are "slowly progressing diseases" and, therefore, a medical opinion is

required to establish a correct onset date of disability.  The Court does not agree.


Initially, the Court notes that pursuant to the Hearings, Appeals, and Litigation Law

Manual (HALLEX) I-2-5-34(B), an ALJ is only required to obtain the expert testimony of a

medical expert in the following instances: (1) when ordered by the appeals council or a court; (2)

to evaluate and interpret background medical test data; or (3) when the ALJ is considering a

finding that the claimant's impairment(s) medically equals a medical listing. HALLEX I-2-5-

34(B): When to Obtain Medical Expert Opinion, available at

http://www.ssa.gov/OP_Home/hallex/I-02/I-2-5-34.html.  Plaintiff has not argued, and the Court

does not find, that a determination of the correct onset date of disability fits into any of these

categories.

Moreover, the Court finds Plaintiff's reliance on <u>Walton v. Halter</u>, 243 F.3d 703 (3d Cir. 2001), and <u>Newell v. Comm'r Soc. Sec.</u>, 347 F.3d 541 (3d Cir.2003), to be inapposite.  In <u>Walton</u>, the Third Circuit held that an ALJ must call upon the services of a medical advisor not simply where the alleged impairment was alleged to be slowly progressing, but also where the alleged onset date was far in the past, and adequate medical records for the most relevant period were unavailable. 243 F.3d 703, 709 (3d Cir.2001); <u>see also</u> <u>Newell v. Comm'r of Soc. Sec.</u>, 347 F.3d 541, 549 n. 7 (3d Cir.2003); <u>see also</u> <u>Jakubowski v. Comm'r of Soc. Sec.</u>, 215 Fed.Appx. 104, 107-08 (3d Cir.2007) (affirming judgment of district court affirming decision of Commissioner, and distinguishing case from <u>Walton</u>, because ALJ had access to adequate medical records from relevant time period, and records did not support plaintiff's alleged onset date).  Here, while Plaintiff suggests that her mental impairments amounted to a slowly progressing disease since the ALJ found that she suffered from mental illness beginning in April 1, 2001, in the absence of anything more, Plaintiff's bald allegation is not enough to warrant the appointment of a psychiatric medical advisor.  Moreover, in light of the extensive record comprising evaluations of numerous examining and treating physicians and social workers between 2001 and 2005,  Plaintiff does not and cannot contend that adequate medical records during the relevant period are unavailable.  For these reasons, the Court finds that the ALJ was not required to obtain psychiatric expert testimony to establish an onset date.

## III. Conclusion

For the reasons set forth above, the Court concludes that there is substantial evidence in the record to support the ALJ's determination that Plaintiff was not disabled between April 1,

2001 and August 30, 2005. Therefore, the ALJ's decision is affirmed.


Dated: February 3, 2011                    /s/ Freda L. Wolfson

                                           Freda L. Wolfson, U.S.D.J.

24